UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

TANYA GILMORE )
)
    Plaintiff, ) Civil No.: 11-175-GFVT
)
V. ) **MEMORANDUM OPINION**
) **&**
WHITLEY COUNTY BOARD OF ) **ORDER**
EDUCATION )
)
    Defendant. )

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Tanya Gilmore claims that the Whitley County Board of Education passed over her for special education teaching positions in its school district because of her age, thereby violating the Age Discrimination in Employment Act (ADEA). The Whitley County Board of Education responds that Gilmore's candidacy was rejected in favor of others who better met the needs of the school district at the time. Further, the Board claims that Gilmore has not placed any facts in the record that would indicate that she is the victim of intentional age discrimination. Because the Court finds that Gilmore has failed to meet her burden of persuasion in showing that the Board's legitimate nondiscriminatory reasons for failing to hire her are pretextual, the Whitley County Board of Eduction's Motion for Summary Judgment shall be **GRANTED**.

I

Tanya Gilmore began applying for positions with the Whitley County School Board in 2006, when she was just over forty years old. [R. 33 at 13]. While she was not yet fully certified, she sought positions for which she qualified for a temporary provisional certification

under Kentucky law. [*Id*.] By 2009, Gilmore had achieved her Rank I certification, which qualified her to teach classes for students with Leaning Behavioral Disorders (LBD). [*Id*.] After that time, she claims to have unsuccessfully applied to every LBD opening in the Whitley County School District. [*Id*.] In several cases, the schools chose to hire teachers substantially younger than her, including: Roger Tyler Ayers, Dena Hodge, Michael Jeremy Lake, Stephanie Leann Lawson, and James Michael Petrey. [R. 33 at 4-5]. In Gilmore's view, many of these individuals were not only younger than her, but also less qualified than her for the position for which the school hired them.

Being passed over for these positions was especially surprising for Gilmore because she claims that school administrators essentially promised her a job. She states that former Superintendent Lonnie Anderson told her that he felt "reasonably assured" that Gilmore could be hired if she finished her certification. [R. 31-1 at 48]. Anderson has tendered an affidavit denying that he ever promised Gilmore a teaching position. [R. 27 at 1]. Gilmore also claims that former principal Linda Rickett, who had previously been complementary of her work as a substitute teacher, told Gilmore that she wanted to hire her for a special education position at Whitley County Middle School, but "they" would not let her. [R. 33 at 15]. The record never makes clear who exactly "they" are or why "they" did not want to hire Gilmore, but Rickett has tendered an affidavit denying that she ever promised Gilmore a position. [R. 29 at 2]. Finally, Gilmore asserts that John Clifton, the principal at Whitley East Elementary, told her on multiple occasions that he would hire her if a position opened up, but when one did become available in his school, it was not filled. [R. 33 at 15].

Gilmore served as a substitute teacher, presumably for the Whitley County School

District, from 2006 to 2010. [R. 1 at 2]. In January 2010, she left Whitley County Schools for a position with the Middlesboro Independent School Board, which she maintained until June of the same year. [R. 32-1 at 2]. In August 2012, she became employed by the Fulton Independent Board of Education, where she continued to work at the time of the filing of the Defendant's motion for summary judgment. [*Id.*]. Nonetheless, Gilmore continued to seek employment in Whitley County. Despite her applications, her qualifications, and the alleged promises of school employees, she remained unable to secure a full-time special education position with the Whitley County Board of Education.

Believing that the Whitley County Board of Education had discriminated against her on the basis of her age, Gilmore filed a charge of discrimination with the Equal Opportunity Commission and received a Notice of Right-to-Sue on March 28, 2011. [R. 1 at 3]. Gilmore now brings claims against the Whitley County Board of Education for violating the ADEA. [R. 1]. The Board has moved to have summary judgment entered in its favor on these claims, and having been briefed by both parties, that motion is now ripe for review. [R. 32].

II

A

Under Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may make this showing by demonstrating the absence of evidence to support one of the essential elements of the nonmoving party's claim. *Id*. at 322-25. Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56. Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

B

The ADEA prohibits an employer from refusing to hire an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). "'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 153 (2000)). In the Sixth Circuit, when a plaintiff seeks to prove intentional discrimination under the ADEA with

4

circumstantial evidence, the *McDonnell Douglas* framework applies. *Id*. (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)). Under this familiar analysis, the plaintiff must first establish a prime facie case of age discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves*, 530 U.S. at 153). If the plaintiff is successful, the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id*. at 264 (citing *Allen v. Highlands Hosp. Corp*., 545 F.3d 387, 394 (6th Cir. 2008)). Once this showing has been made, "the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination." *Id*. Importantly, though the burden of production shifts throughout the analysis, "[t]he burden of persuasion, however, remains on the ADEA plaintiff at all times to demonstrate that age was the 'but-for' cause of their employer's adverse action." *Id*. (citing *Geiger*, 579 F.3d at 620; *Gross,* 557 U.S. at 623 n. 4).

For Gilmore to establish a prima facie case of age discrimination under the ADEA, she must prove that: (1) she was over forty years old at the time of the alleged discrimination and thus a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she applied for and was qualified to perform the relevant position; and (4) she was rejected in favor of a similarly qualified person, who is substantially younger. *Viergutz v. Lucent Technologies, Inc*., 375 Fed.Appx. 482, 484 (6th Cir. 2010) (unpublished) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998)).

Gilmore's claims are not based on a single incident of disparate treatment, but a series of occasions wherein she unsuccessfully applied for jobs with the Whitley County School Board. Though she maintains that she applied for "any open position for which [she] qualified" since

5

2006, Gilmore only specifically names five substantially younger teachers who received jobs over her in Whitley County schools – Roger Ayers (Born in 1987), Dena Hodge (Born in 1984), Jeremy Lake (Born in 1984), Stephanie Lawson (Born in 1981), James Petrey (Born in 1985). Gilmore indicates that "[t]his may not be 'all' that were hired for special education who are much younger than I am, but these are the ones I am positive about." [R. 33 at 16]. However, it does not appear from the record that Gilmore has provided the names of any additional younger teachers hired over her. Because it is her burden at this stage to show that "she was rejected in favor of a similarly qualified person, who is substantially younger," she has not made out a prima facie case beyond these five enumerated teachers. *Viergutz*, 375 Fed.Appx., at 484 (citing *Bush*, 161 F.3d. at 368 (6th Cir. 1998)). This number may be narrowed further because two of those teachers, Jeremy Lake and Dena Hodge, were hired by Whitley County High School. Beyond Gilmore's nebulous assertion that she applied for every open position, the record indicates that she only applied for positions at the elementary and middle school levels. [*See* R. 31-1 at 80]. Gilmore does not dispute that this is the case in her response brief. Therefore, because she did not apply for and get rejected for the positions given to Lake and Hodge, Gilmore also cannot make out a prima facie case of discrimination in those instances.

Though the Whitley County Board of Education technically disputes that Gilmore has made out a prima facie case of age discrimination in the other three instances, the facts establishing that she has done so are largely uncontroverted. It is not disputed that Gilmore, who was born in 1964, is over 40 years old and thus a member of a protected class. Gilmore was subjected to an adverse employment action. She was certified and applied for positions as an LBD and special education teacher, but was rejected. Finally, she has shown that Roger Ayers

6

(Born in 1987), Stephanie Lawson (Born in 1981), James Petrey (Born in 1985), who were hired instead of her, were similarly qualified but substantially younger. Thus, she has made a prima facie showing of age discrimination in these three circumstances.

However, the Whitley County Board of Education is not required to hire Gilmore simply because she is older than her fellow applicants. Employers may generally make a subjective judgment to hire an employee "for any reason that is not discriminatory." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) (citing *Walter v. KFGO Radio*, 518 F.Supp. 1309, 1314 (D.N.D. 1981)). The Board meets its burden of production at this step of the analysis by showing that there was a legitimate nondiscriminatory reason that it passed over Gilmore for the teaching positions for which she applied. *Viergutz*, 375 Fed.Appx., at 484 (citing *Bush*, 161 F.3d. at 368 (6th Cir. 1998)).

Whitley County has provided justifications for why it hired each of the named teachers over Gilmore. First, the Board indicates that Roger Ayers was hired instead of Gilmore for a special education position for the 2010-2011 school year. However, unlike Gilmore, Ayers was also certified in mathematics, which he has been teaching since he was hired. The Board maintains that it did not hire Ayers over Gilmore due to the difference in age, but because the former met needs of the school that the latter did not. In the 2010-2011 school year, Stephanie Lawson and James Petrey both assumed new special education posts for which Gilmore also applied. However, neither Lawson nor Petrey were new employees, as both had been transferred from other positions within the district. Further, Petrey also served as a football and basketball coach at his new school, meeting a need at the school that Gilmore had no experience to fill.

The justifications advanced by the Board are certainly sufficient to constitute legitimate

7

nondiscriminatory reasons for passing over Gilmore. Public school districts, burdened with somewhat restrictive termination regulations, limited state funding, and ever-changing student populations in their various schools, might reasonably find that the most prudent course of action is to transfer an employee from one position to another.[1] Further, the Board would have been justified in hiring a single candidate who could meet multiple needs, rather than hiring multiple employees to fulfill those duties.[2] By showing a legitimate nondiscriminatory reason for hiring Ayers, Petrey, and Lawson, the Whitley County Board of Education has met its burden of production on this step of the analysis.

In order to proceed to trial, Gilmore must have advanced sufficient facts that a reasonable jury could find that the nondiscriminatory reasons proffered by the Board were pretextual for its true motive of age discrimination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Mickey v. Zeidler Tool Die Co.*, 516 F.3d 516, 526 (6th Cir. 2009)). Gilmore may demonstrate pretext by showing that the Whitley County Board of Education's reasons for passing over Gilmore: "(1) have no basis in fact, (2) are not the actual reasons, or (3) are insufficient to explain [Defendant's] actions." *Felder v. Nortel Networks Corp.,* 187 Fed.Appx. 586, 592 (6th Cir. 2006) (unpublished) (citing *Logan v. Denny's Inc.,* 259 F.3d 558, 567 (6th Cir.2001)).

---

1 Though the Board does not go into detail about why it was advantageous to the district to transfer these employees, it takes no great logical leap to divine why such a move could be preferable. Perhaps the populations of the schools changed, requiring one school to lose a special education teaching position and another school to gain one. Perhaps, the transferring teacher was tenured but in recent years had proven not to have been a good fit at the school or with the age group for which he or she was originally hired, and a fresh start at a new place would be desirable. Perhaps the transferred teacher had been moved to accommodate the state teacher of the year, who had recently moved to Whitley County. Whatever the reason, it is clear that the ability to shuffle around teachers within a school district without hiring someone new could conceivably be quite beneficial to the needs of the school.

2 Gilmore herself concedes that "a person's ability to perform [additional] services should be a criteria that an employer in a school system should take into account." [R. 31-1 at 52].

As an initial matter, it must first be noted that Gilmore has done very little by way of producing any evidence at all. She has taken no depositions and has tendered no affidavits in support of her position. The meager record of this case is limited primarily to the deposition taken of Gilmore by the Board and Gilmore's responses to the Board's interrogatories. Even accepting all of the statements made by Gilmore in these materials and her briefs, the Court finds that Gilmore has not carried her burden concerning pretext.

Gilmore argues that several administrators in the school system, including principals and the former superintendent, led her to believe that they wanted to hire her for various positions in the district. And while it is questionable as to whether these administrators ever promised her a job, even if they did, it is difficult to ascertain what relationship this has to Gilmore's age. Age is not mentioned in any of Gilmore's alleged conversations with Whitley County administrators. [R. 33 at 13]. Further, the comments that Gilmore cites are not inconsistent with nor do they cast any doubt on the Board's legitimate nondiscriminatory reasons for not hiring Gilmore. Though it would certainly be a shame if administrators in the school district misled Gilmore about the odds of her being hired, the statements made by the school district employees are largely irrelevant to this analysis and do not show the Board's reasons for hiring certain employees over Gilmore to be pretextual.

In a more relevant argument, Gilmore attacks the credentials of the younger teachers who were hired over her. In the cases of Stephane Lawson and James Petrey, Gilmore claims that they "were not LBD certified or 'highly qualified.'" [R. 33 at 7]. However, Gilmore herself notes that Lawson and Petrey acquired temporary provisional certifications to teach the positions

9

in which they were placed.[3] Kentucky law allows several alternative certification programs under which teachers may become certified to teach in the public schools. KRS 161.048. Under at least one of those options, the Kentucky General Assembly allows the Education Standards Board to grant a "temporary provisional certificate," which allows the qualifying person to teach in the public schools for a period of time until they finish the program and are granted a professional teaching certificate. KRS 161.048(7). At the present time, there is a bill before the Education Committee of the Kentucky House of Representatives that would "require teacher vacancies to be filled by qualified teachers certified though a regular certification program before considering applicants certified though an alternative certification program." House Bill 20, 2014 Kentucky Regular Legislative Session; *see* http://www.lrc.ky.gov/record/14RS/HB20.htm. However, regardless of the fate of this bill in the General Assembly, at the time Lawson and Petrey were hired, the Board needed not place any special weight on one form of certification over the other. Therefore, counter to the suggestions of Gilmore, she was not passed over by unqualified individuals. According to the facts of the record, Petrey, Lawson, Ayers, and Gilmore were all certified under Kentucky law to teach the positions for which they applied.

Gilmore seems to also maintain that, even if those hired over her were qualified, she was *more* qualified than they were. Gilmore had achieved a Rank I, while Ayers had only a Rank III. Lawson and Petrey had temporary provisional certifications, while Gilmore had a full

---

3 Gilmore presents somewhat contradictory information about the certification concerning the certification of James Petrey. [R. 33 at 8]. In her response, Gilmore claims that the hiring of Petrey was in violation of Kentucky law. However, in two other instances in her response, she acknowledges that he was temporarily provisionally certified to teach LBD classes. [R. 33 at 7]. As discussed herein, the fact that Petrey had a temporary provisional certification does not necessarily mean that he was not certified. Gilmore could have tendered evidence to show that Petrey was not actually in possession of a temporary provisional certificate or that this certification was insufficient to qualify him for the relevant teaching position. As she has not done so, this argument fails to support her showing of pretext.

professional teaching certificate. However, this does not change the fact that Ayers and Petrey were able to meet needs of their respective schools that Gilmore could not – namely teaching mathematics and coaching athletic teams. Further, Lawson and Petrey had been employees of the school district during the previous year and so, as discussed, there were potential advantages to being able to transfer them over having to hire an additional new teacher. Whether or not Gilmore or even the Court might not find these reasons prudent, "[s]o long as its reasons are not discriminatory, an employer is free to choose among qualified candidates." *Schooner*, 595 F.3d at 261 (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)); *See also Ackerman*, 670 F.2d 66, 70 (6th Cir.1982) (citing *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980) (noting that "the ADEA was not intended as a vehicle for judicial review of business decisions.").

In short, the Whitley County Board of Education says that it hired people younger than Gilmore because those individuals were qualified and met certain needs of the district that Gilmore did not – they taught additional subjects, coached athletic teams, or allowed the school district to shuffle around personnel in a more advantageous manner. The few arguments made and little evidence produced by Gilmore do not work together to show that these reasons have no basis in fact, are not the actual reasons, or are insufficient to explain the Board's actions. As such, Gilmore has failed to carry her burden to show the decisions of the Board to be pretextual. Moreover, on this record, no juror could reasonably conclude that the but-for cause of Gilmore's rejection was age discrimination by the Whitley County Board of Education. The Board's motion for summary judgment shall, therefore, be granted and Gilmore's claims shall be dismissed.

### III

Accordingly, and for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1) Whitley County Board of Education's Motion for Summary Judgment [R. 32] is **GRANTED**;

(2) The Pretrial Conference set for March 3, 2014 and the Jury Trial set for March 17, 2014 are **CANCELLED**;

(3) There being no remaining claims, this matter is **STRICKEN** from the active docket; and

(4) A separate **JUDGMENT** shall enter.

This 26th day of February, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge